IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY,

                Plaintiff,

v.                                          CIVIL  ACTION  NO.  3:10-0016

BOBBY MACK JORDAN,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 33).  Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") is a Massachusetts corporation. Defendant Bobby Mack Jordan, a resident of West Virginia, is the father to the decedent, Billy Jordan, who had a life insurance policy with MassMutual.  The Policy at the center of the dispute in this action is for $100,000.  As the parties are diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction.  28 U.S.C. § 1332(a).  For the following reasons, Plaintiff's motion is **GRANTED**.

### I.  BACKGROUND

On or about May 28, 2007, Billy Jordan, son of Defendant Bobby Mack Jordan, applied for the life insurance policy at issue in this action.  Billy Jordan, Bobby Mack Jordan, and James Hunter, the insurance agent, were all present at the time Billy Jordan filled out his application.  *Dep. James Hunter* 35, *Ex. H.*, Doc. 33-8.  At this meeting, Billy and Bobby Jordan provided information to Mr. Hunter, who transcribed the responses on to the application form.  Of particular relevance to the

current action are the answers Billy Jordan provided to the following questions under sub-section

L of the application form, and the additional information he provided in the Supplement To

Application:

> Question 10(a): "In the last 10 years have you . . . used cocaine, barbiturates, narcotics, stimulants, hallucinogens, or other controlled substances not prescribed by a physician?" Billy Jordan responded "No."

> Question 10(b): "In the last 10 years have you . . . received treatment, attended a program or been counseled for alcohol or drug abuse, or been advised by a health professional to reduce the use of alcohol?" Billy Jordan responded "No."

> Question 15(a): "In the last year, unless previously stated on this application, have you . . . had a physical exam, checkup, or evaluation by a health professional? (If Yes, provide diagnosis or findings)" Billy Jordan responded "Yes" and further elucidated by writing "throat/strep/sick".

> Questions 15(b): "In the last year, unless previously stated on this application, have you . . . had an injury treated by a health professional or medical facility?" Billy Jordan responded "No."

> Question 15(d): "In the last year, unless previously stated on this application, have you . . . had surgery or been a patient in a hospital, clinic, or other medical or mental health facility?" Billy Jordan responded "No."

> Amendment of Application: Billy Jordan reported treatment in June 2007 for a shoulder injury.

*Policy Application* 7–8, Doc. 33-1; *Supplement to Application*, Doc. 33-4. At the end of the

application, above the signature block where Billy Jordan signed his name, is the following

language: "To the best of my knowledge and belief, all statements made in this Part 1 are complete,

true, and correctly recorded. I hereby adopt all statements made in the application and agree to be

bound by them." *Policy Application* 9. The supplement contains similar language. *Supplement to*

*Application*.

-2-

On the basis of the information contained in the application, Plaintiff issued a $100,000 life insurance policy on July 17, 2007, to Billy Jordan.[1]  *Policy*, Schedule Page, *Ex. B*, Doc. 33-2.  On July 7, 2009, Billy Jordan died of a gunshot wound, within the contestation period of the Policy.  *Compl.* ¶ 11, Doc. 1.  The contestation clause provides:

> We rely on all statements made by or for the Insured in the application.  Legally, these statements are considered to be representations and not warranties.  We can bring legal action to contest the validity of this policy for any material misrepresentation of a fact.  To do so, however, the misrepresentation must have been in the application for this policy and a copy of the application must have been attached to this policy when issued.  In the absence of fraud, we cannot contest the validity of this policy after it has been in force during the lifetime of the Insured for two years from its Issue date, except for failure to pay premiums.

*Policy* at 3–4.  Defendant Bobby Mack Jordan filed a claim for benefits on July 24, 2009.  *Compl.* ¶ 12.  As Billy Jordan's death occurred within the two year contestation period, MassMutual conducted an investigation prior to ruling on Defendant's claim for life insurance benefits.

In the course of reviewing Defendant's insurance claim, Plaintiff obtained medical and police records establishing the treatment of Billy Jordan for an apparent heroin overdose in August 2006, within one year prior to his application for the Policy.  *Ex. F*, Doc. 33-6.  This was confirmed through documents obtained from Cabell Huntington Hospital during discovery conducted pursuant to this action.  *See generally CHH Docs.*, *Ex. G*, Doc. 33-7.  On the basis of this information, Plaintiff asserts that Billy Jordan misrepresented a material fact that would have led Plaintiff to deny his application for the insurance policy had Plaintiff known this information at the time it was processing the decedent's application.  To support this assertion, Plaintiff cites their internal underwriting guidelines, which state MassMutual will deny a policy application if the applicant

---

[1] While the Policy insured Billy Jordan, Bobby Mack Jordan is the owner and primary beneficiary of the Policy.

currently uses or has used within the past three years heroin or any type of illegally obtained narcotics. *Internal Underwriting Guidelines*, *Ex. E* 7, Doc. 33-5.

On the basis of the foregoing, Plaintiff is seeking a declaratory judgment that MassMutual be allowed to rescind the Policy. Defendant, in his answer to the Complaint, filed a number of counterclaims, asserting a breach of contract claim, an unfair claim settlement practices claim, a common law bad faith claim, and a misrepresentation of insurance policies claim. Following discovery, Plaintiff filed the current motion, seeking summary judgment on all claims, including Defendant's counterclaims. All issues have been fully briefed, and are ripe for disposition.

## II.  LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

-4-

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

**A.     Plaintiff's Declaratory Judgment Claim**

For an insurer to rescind a policy under West Virginia law on the basis of a misrepresentation made by the insured, the insurer must establish that the misrepresentation falls under W. Va. Code § 33-6-7, which states:

> Misrepresentations, omissions, concealments of fact, and incorrect statements shall not prevent a recovery under the [insurance] policy unless:
>
> > (a) Fraudulent; or
> > (b) Material either to the acceptance of the risk, or the hazard assumed by the insurer; or
> > (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

W. Va. Code § 33-6-7.  Accordingly, for Plaintiff to succeed in its claims and rescind the Policy, it must establish that Billy Jordan made a statement on his application that falls within one of the three categories enumerated in this provision.  Plaintiff contends that the evidence of the heroin overdose is sufficient to establish rescission under the latter two sub-sections, and also suggests that it is sufficient evidence to prove fraud under subsection (a).  The Court declines to reach the latter issue as it agrees that Plaintiff has established grounds for rescission under §§ 33-6-7(b) and (c).

While a plaintiff must establish intent on the part of the insured when asserting rescission under § 33-6-7(a), *see* Syl. Pt. 4, *Powell v. Time Ins. Co.*, 382 S.E.2d 342 (W. Va. 1989), to succeed under §§ 33-6-7 (b) and (c), a plaintiff need merely satisfy the standard for materiality, *Mass. Mut.*

*Life Ins. Co. v. Thompson*, 460 S.E.2d 719, 724 (W. Va. 1995).  The West Virginia Supreme Court

has established the following standard for materiality:

> Materiality is determined by whether the insurer in good faith would either not have
> issued the policy, or would not have issued a policy in as large an amount, or would
> not have provided coverage with respect to the hazard resulting in the loss, if the true
> facts had been made known to the insurer as required either by the application for the
> policy or otherwise.

*Thompson*, 460 S.E.2d at Syl. Pt. 3 (quoting *Powell*, 382 S.E.2d at Syl. Pt. 5).  Materiality is

determined based on an objective test "of whether a reasonably prudent insurer would consider a

misrepresentation material to the contract."  *Id.* at Syl. Pt. 4 (quoting *Powell*, 382 S.E.2d at Syl. Pt.

6).  Further, "[w]here an insurer seeks to avoid a policy based on a material misrepresentation, this

assertion is in the nature of an affirmative defense which the insurer must prove by a preponderance

of the evidence."  *Id.* at Syl. Pt. 5 (quoting *Powell*, 382 S.E.2d at Syl. Pt. 7).  If a plaintiff is asserting

rescission under subsection (c), the "criteria are based on an objective standard that an 'insurer in

good faith' would have taken alternative action had the 'true facts been known.'" *Powell*, 382 S.E.2d

at 350.  Lastly, West Virginia has adopted "[t]he almost universal rule . . . that . . . there need be no

causal connection between the cause of death and the misrepresentation . . . ."  *Thompson*, 460

S.E.2d at 724–25.

Plaintiff has satisfied these standards.  First, Billy Jordan made several misrepresentations

in his responses to the questions contained in the policy application.  Question 10 required the

decedent to disclose any information regarding use of controlled substances in the past ten years;

the decedent clearly failed to do this.  Documents obtained by Plaintiff from Cabell Huntington

Hospital establish that the decedent used drugs one year prior to his application for the health

insurance policy, and was admitted to the hospital for a heroin overdose.  *See CHH Docs.*  The

documents reveal that the decedent tested positive through urinalysis for cocaine, benzodiazepines, and opiates,[2] and that the decedent admitted to using heroin the evening of the overdose[3].  *Id.* at CHH-10, CHH-74.   Question 15 required the decedent to disclose all instances where he had received medical treatment in the year prior to applying for the life insurance, including hospitalizations; again, the decedent failed to do this.   Billy Jordan disclosed the treatment he received for strep throat and an injured shoulder.   He did not, however, disclose the treatment he received from Cabell Huntington Hospital in August 2006 for the overdose.   Compare *Policy Application* and *Supplement to Application* with *CHH Docs.*

Second, these misrepresentations are material.  Plaintiff's internal underwriting guidelines that were in effect at the time the decedent's Policy was processed clearly states that if an applicant has used illegal drugs within three years prior to the date of the application, MassMutual will deny the application. *See Aff. of Howard Knudsen* ¶¶ 6, 11, *Ex. E*, Doc. 33-5; *Internal Underwriting Guidelines*.  This alone is sufficient to satisfy the materiality standard.  If MassMutual had known these facts regarding Billy Jordan's drug use, MassMutual has clearly established it would not have issued the Policy.   *Id.*   Plaintiff further supports its argument by citing case law in varying jurisdictions which likewise conclude that an insurance applicant's prior drug use is a material fact. *See, e.g.*, *Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 298 (3d Cir. 2002) (allowing rescission because applicant did not disclose ongoing treatment for alcohol and cocaine

---

[2] The Court notes that a positive result by urinalysis is merely a presumptive positive and for screening purposes only.   However, the Court finds this information in combination with the decedent's admission that he used heroin that evening is sufficient evidence to establish the misrepresentation.

[3] These admissions are admissible under *Fed. R. Evid.* 803(4) and 803(6).

use); *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 778–79 (4th Cir. 1990) (allowing rescission because the applicant did not disclose smoking habit and history of drug use); *Moeller Tevez v. Allmerica Fin. Life Ins. & Annuity Co.*, 534 F. Supp. 2d 253, 259–60 (D.P.R. 2008) (finding the applicant's failure to disclose cocaine and heroin use to be a material misrepresentation). Defendant has been unable to provide any additional facts or precedent that suggests otherwise.  The materiality of these omitted facts is therefore undisputed.

Defendant nevertheless argues against summary judgment in this case.  First, Defendant asserts that MassMutual cannot make the required showing under § 33-6-7.  He appears to base this argument on the existence of a 24-month authorization period by Billy Jordan.  During this period, which ran from when the application was submitted, Billy Jordan granted MassMutual access to his medical and non-medical records.  *Policy Application* 9.  Defendant contends that because Plaintiff failed to seek the Cabell Huntington Hospital records prior to issuing the Policy, the materiality of the omissions is in doubt.  This argument has no merit.  The thoroughness of an underwriting investigation is a separate issue from whether a misrepresentation is material under West Virginia law.  The latter requires the Court to determine, under an objective standard, whether a reasonably prudent insurer, in possession of the material facts that were misrepresented, would have reached a different decision on whether to issue the Policy.

Further, requiring an insurer to obtain all relevant medical records during its underwriting investigation when the insurer is not aware of treatment by a health care provider, particularly when the insurer is unaware of the treatment in question *because of the insured's misrepresentation*, would be an absurd result.  This conclusion is supported by the multitude of courts that have concluded that insurers can rely on the information contained in applications, without conducting

-8-

further investigation, when completing their underwriting investigations. *See, e.g.*, *Wesley v. Union Nat'l Life*, 919 F. Supp. 232, 235 (S.D. Miss. 1995); *Harper v. Fidelity & Guaranty Life Ins. Co.*, 234 P.3d 1211, 1218–19 (Wyo. 2010); *Hornback v. Bankers Life Ins. Co.*, 176 S.W.3d 699, 704–05 (Ky. App. 2005). While Defendant is correct in stating that MassMutual was not limited to Billy Jordan's application in its underwriting investigation, *Def.'s Resp.* 9, Doc. 37, this does not mean Plaintiff was required to look beyond the application in deciding whether or not to issue the Policy when the application presented no "red flags" indicating a need for follow-up investigation. Accordingly, Plaintiff's decision to accept the information provided in the application at face value has no impact on the materiality of Billy Jordan's misrepresentations.

Defendant next argues that this Court should be guided in its analysis by Judge Copenhaver's decision in *White v. American General Life Insurance Co.*, 651 F. Supp. 2d 530 (S.D. W. Va. 2009). In that case, Judge Copenhaver found that the materiality of the misrepresentations was in doubt as the application questions inquiring whether the insured suffered mental disorders were ambiguous. *Id.* at 542–44. Judge Copenhaver therefore concluded that summary judgment was improper as the court could not determine based on the record whether the insured did, in fact, suffer from a mental disorder, as that term was ambiguous. *Id.* at 544. The situation present in *White* is not present in this case. Question 10(a) is clear in its meaning. It asked Billy Jordan whether, in the ten years prior to the application date, he had used any non-prescribed controlled substances. Heroin is a known controlled substance; further, he was treated for an overdose of the drug one year prior to his application. This not a situation where "the language . . . is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning . . . ." Syl. Pt. 1, *Surbaugh v. Stonewall Cas. Co.*, 283 S.E.2d 859 (W. Va. 1981)

(quoting Syl. Pt. 1, *Prete v. Merchants Property Ins. Co.*, 223 S.E.2d 441 (1976)).  The various sub-questions contained in Question 15 are likewise clear.  If there was uncertainty regarding whether it fell within sub-questions 15(a) or (b), the question regarding whether Billy Jordan had been a patient in a hospital contained in subsection (d) was not ambiguous.  It is clear that having heard that question he should have answered in the affirmative and disclosed his admittance to Cabell Huntington Hospital for the overdose in August 2006.  Unlike in *White*, the materiality of Billy Jordan's misrepresentations are not in dispute as the questions to which he made misrepresentations are not ambiguous.[4]

Defendant further asserts that Billy Jordan may have concealed his prior drug use because he may have been uncomfortable revealing this information in front of his father during the application interview with James Hunter.  The subjective reason for Billy Jordan's decision to make the misrepresentation is immaterial; what matters is that there was a material misrepresentation.[5] Defendant also argues that Billy Jordan may not have known the ramification of making a misrepresentation regarding a material fact.  Again, this is irrelevant to the analysis.  First, the language above the signature block made it clear that Billy Jordan was certifying that the information contained in the application was true and complete, and that he was bound by the answers he provided.  Second, the standard for rescission asks the Court to determine whether a

---

[4] Because these questions are not ambiguous, the reasonable expectations doctrine does not apply in this case.  This doctrine requires a court to take into account the insured's reasonable expectations of coverage when interpreting ambiguous policy provisions.  *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 63 (W. Va. 2010).  Because there are no ambiguous provisions at issue, and the application questions at issue in this case are not ambiguous, this doctrine does not save Defendant from summary judgment.

[5] This would be of import if Plaintiff were relying on § 33-6-7(a), as fraud requires a plaintiff to establish the defendant acted knowingly and with intent to withhold information.

reasonably prudent insurer would have reached a different conclusion regarding whether to issue the insurance policy if it had known the true facts that were misrepresented; Plaintiff has satisfied this standard.

Taking the facts in the light most favorable to the non-moving party—Defendant—the Court can only conclude that Plaintiff has satisfied every element of its claim. The decedent, Billy Jordan, made material misrepresentations on his application for life insurance. If MassMutual had known these facts at the time, it would have denied the decedent's application. Accordingly, Plaintiff has satisfied the requirements for rescission under § 33-6-7. Summary judgment is therefore **GRANTED** on Plaintiff's declaratory judgment claim.

## B.   <u>Defendant's Counterclaims</u>

Plaintiff also seeks summary judgment on Defendant's counterclaims for breach of contract, unfair claims settlement practices, common law bad faith, and misrepresentation. Plaintiff contends that because the Court has concluded that MassMutual is entitled to rescind the Policy, each of these claims should be dismissed. Plaintiff argues that because the legal effect of rescission is to render the Policy void *ab initio*, each of the counterclaims are rendered non-viable. The Court will review each counterclaim in turn.

### i.   *Breach of Contract Counterclaim*

The breach of contract claim fails. As the Policy is void, there is no contract that MassMutual can breach. Accordingly, Plaintiff is **GRANTED** summary judgment on Defendant's breach of contract claim. Count One of the Counterclaim is therefore **DISMISSED with prejudice**.

## ii.   *Unfair Claims Settlement Practices Counterclaim*

Bobby Mack Jordan's unfair claims settlement practices claim fails as well.  To establish such a claim, the claimant must establish the insurer is in violation of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-4(9), which prohibits certain "general business practices" in the settling of claims.  Defendant states that Plaintiff violated the following subsections of that provision in its handling of his claim for life insurance benefits:

> § 33-11-4(9)(c): Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> § 33-11-4(9)(d): Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> § 33-11-4(9)(f): Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> § 33-11-4(9)(n): Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

The West Virginia Supreme Court of Appeals has stated that determining whether the insurer's conduct under UTPA is reasonable is a question of fact ordinarily for the jury.  Syl. Pt. 5, *Hicks ex rel. Saus v. Jones*, 617 S.E.2d 457 (W. Va. 2005) (quoting Syl. Pt. 3, *Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346 (W. Va. 2004)).

The claimant must also establish "that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice."  *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005).  To support his claim, Defendant cites *Dodrill v. Nationwide Mutual Insurance Co.*, 491 S.E.2d 1 (W. Va. 1996), for the principle that an insurer's conduct in processing a single settlement claim can constitute a "general business practice" under § 33-11-4(9).  In such an action, the claimant must provide evidence that establishes

-12-

that the conduct in question constitutes more than a single violation of W. Va. Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Dodrill*, 491 S.E.2d at Syl. Pt. 4.

While the Court recognizes the rule laid out in *Jones* stating that the issue of reasonableness is a question for the jury, the Court finds that Defendant has failed to establish that MassMutual's behavior in this instance arises to a general business practice. Defendant has not provided any evidence at all to establish that Plaintiff has a general business practice that is in violation of § 33-11-4(9). He does no more than recite the standard in *Dodrill* and then make the conclusory statement that he "can prove a 'general business practice' as prohibited by the UTPA/UCSPA, based on [Plaintiff's] improper denial of *his claim* for death benefits payable under *the policy* insuring *his son*." *Defs. Resp.* 18 (emphasis added). While MassMutual's conduct may have been unreasonable and in violation of UTPA, Defendant has pointed to no evidence indicating that the conduct here is representative of a general business practice. On the contrary, Defendant's evidence of an UTPA violation is solely based on MassMutual's conduct with regard to Billy Jordan's policy. There is no evidence indicating that the facts of this case are anything more than an "isolated event." *Dodrill*, 491 S.E.2d at Syl. Pt. 4. Accordingly, Defendant cannot survive summary judgment and Plaintiff's motion is **GRANTED**. Count Two of Defendant's Crossclaim is therefore **DISMISSED with prejudice**.

### iii.   Common Law Bad Faith Counterclaim

Plaintiff contends that as there is no coverage under the Policy, there are no grounds for a common law bad faith claim. *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 513 S.E.2d 692, 711–12 (W. Va. 1998).    In *Jordache*, the West Virginia Supreme Court of Appeals concluded that "[i]n order for a policyholder to bring a common law bad faith claim against his insurer, according to *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986) and its progeny, the policyholder must first substantially prevail against his insurer on the underlying contract action." *Id.* at Syl. Pt. 5.   Accordingly, "the determination that there is no coverage . . . extinguishes the common law bad faith . . . claim[] as well." *Id.* at 711.[6]  Here, the Court has concluded that MassMutual is entitled to rescind the Policy, and Defendant is not entitled to benefits under the Policy.   Accordingly, the Court **GRANTS** summary judgment to Plaintiff. Count Three of Defendant's Counterclaim is **DISMISSED with prejudice**.

### iv.   Misrepresentation Counterclaim Under § 33-11-4(1)

Defendant asserts that Plaintiff misrepresented the insurance contract in violation of § 33-11-4(1).   Again, Defendant has failed to state any facts to support this claim.   In fact, Defendant has

---

[6] Defendant nevertheless contends that Plaintiff engaged in post-claim underwriting of the life insurance policy, in violation of *Hayseeds*, as it did not obtain medical records from Cabell Huntington Hospital regarding the decedent until five months after filing the current action. To support this contention, Defendant cites several cases from other jurisdictions: *Lewis v. Equity National Life Insurance Co.*, 637 So.2d 183, 188–89 (Miss. 1994); *White v. Continental General Insurance Co.*, 831 F. Supp. 1545 (D. Wyo. 1993); and *Mattox v. Western Fiduciary Insurance Co.*, 694 F. Supp. 210, 216 (N.D. Miss. 1988). First, each of these cases analyze the law of other jurisdictions, and are not binding on this Court.  Second, there is binding precedent in this jurisdiction, extinguishing a *Hayseeds* claim where there is a determination of no coverage.  Third, as established, *supra*, Plaintiff had the right to rely on Billy Jordan's application in its decision to issue the Policy, and it had the right to exercise its option to contest the claim for benefits under the contestation clause contained in the Policy.

-14-

failed to make a comprehensible argument under this provision.  Defendant merely states in his response brief that the facts of the case indicate that Defendant should prevail on this count of the counterclaim.  Yet, Defendant does not point the Court towards any facts to consider.  A review of Defendant's facts section of his response brief provides no further elucidation.  Plaintiff, however, makes a plausible argument for Defendant as to what his claim could be under § 33-11-4(1)(a), which the Court will analyze.

Section 33-11-4(1)(a) states:

No person shall make, issue, circulate, or cause to be made, issued or circulated, any estimate, circular, statement, sales presentation, omission or comparison which . . . misrepresents the benefits, advantages, conditions or terms of any insurance policy.

Defendant states that he and Billy Jordan were unaware that there was a two year contestation period in the policy and that Billy Jordan was unaware of the ramifications of making misrepresentations on his policy application.  While this may not have been reviewed verbally with the insurance agent, James Hunter, this information was contained in the Policy and on the policy application.  First, the Policy states in the cover letter "READ YOUR POLICY CAREFULLY."  *Policy* at Cover Letter.  If Defendant or Billy Jordan read the Policy, they would have read the clause entitled "Representations and Contestability," which details the contestation period and the relevance of material misrepresentations.  *Id.* at 3.  Further, the policy application clearly states above the signature block, in capital letters, that "any policy issued as a result of material misstatement or omission of facts may be voided, and the company's only obligation shall be to return the premiums paid."  *Policy Application* 9.  MassMutual put Billy Jordan and Defendant on notice that a material misrepresentation could result in the Policy being rescinded and that there was a two year contestation period.  Further, this notice was provided both when Billy Jordan was applying for the

-15-

Policy, and in the Policy itself.  Accordingly, the Court **FINDS** there is no misrepresentation under § 33-11-4(1)(a).  Count Four of the Counterclaim is therefore **DISMISSED with prejudice**.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is **GRANTED** summary judgment on its claims and all of Defendant's counterclaims.  Defendant's counterclaims are **DISMISSED with prejudice**.  The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        May 9, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE